AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

FILED 2007 DEC 18 PM 1:35

Southern DISTRICT OF California

CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

BY KN DEPUTY

| In the Matter of the Search of (Name, address or brief description of person or property to | APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT |
|---|---|
| Express Mail parcel #EB574974847 addressed to Carlita O'Neal, 1358 Peach Avenue, El Cajon, CA 92021. The parcel has the return information of Sonya Campbell, 15913 Raymond, Maple Heights, Ohio 44137. | CASE NUMBER: '07 MJ 2927 |

I, Kim A. Kelly being duly sworn depose and say:

I am a(n) U. S. Postal Inspector (Official Title) and have reason to believe

that on the premises known as (name, description and/or location)

Express Mail parcel #EB574974847 addressed to Carlita O'Neal, 1358 Peach Avenue, El Cajon, CA 92021. The parcel has the return information of Sonya Campbell, 15913 Raymond, Maple Heights, Ohio 44137. This parcel is in the custody of the U.S. Postal Inspection Service.

in the Southern District of California

there is now concealed property, namely (describe the person or property)

Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence and contraband

in violation of Title 21 United States Code, Section(s) 841(a)(1), 843(b) and 846.

The facts to support the issuance of a Search Warrant are as follows:

See attached.

Continued on the attached sheet and made a part hereof. X Yes ___ No

[signature]
Signature of Affiant

Sworn to before me, and subscribed in my presence

12/11/07 at San Diego, CA
Date City and State

BARBARA L. MAJOR
U.S. MAGISTRATE JUDGE
U.S. Magistrate Judge
Name and Title of Judicial Officer

[signature]
Signature of Judicial Officer

AFFIDAVIT FOR SEARCH WARRANT

I, Kim Kelly, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection Service and my duties include investigating crimes against the U.S. Postal Service and the use of the mail including violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following: Express Mail parcel EB 574974847 addressed to Carlita O'Neal, 1358 Peach Avenue, El Cajon, CA 92021 from Sonya Campbell, 15913 Raymond, Maple HTS OH 44137. This parcel weighs 3.9 ounces.

3. I have been a federal agent for 17 years and employed as a Postal Inspector since July 2007. From Sep 87-93, while employed with the Naval Criminal Investigative Service, I was assigned to investigate narcotics violations.

4. In July 2007, I received specialized training from the U.S. Postal Inspection Service in the following two areas; Investigations involving the use of the U.S. Mails to transport controlled substances and proceeds from the sale of controlled substances; and investigations involving the use of Postal Money Orders and other negotiable instruments to launder the proceeds of controlled substances transactions.

5. Based upon my overall experience, specialized training and discussions with other Postal Inspectors and narcotics agents, I know the following in summary:

a. Individuals who regularly handle controlled substances can leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are

trained to alert on the scents of controlled substances. My experience has shown that occasionally a canine will not immediately alert to the presence of contraband or controlled substance. This may occur for a variety of reasons including the packaging and additional efforts by the sender to mask the scent of a controlled substance. Often the masking agent's scent weakens over time. As a result, a canine may not initially alert to a package they may alert to after a reasonable passage of time.

b. The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

c. Ongoing investigations have disclosed that Express (overnight) and Priority (two day) parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

d. I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

e. Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically Express Mail or Priority Mail, for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1. Items sent via Express Mail or Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2. Express Mail is usually requested to be delivered by the next day's mail.

3. Priority Mail is usually requested to be delivered within two days of mailing.

4. Dispatch times for Express Mail are specific and are controllable by the mailer/shipper.

5. Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of Express Mail or Priority Mail is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of Express Mail or Priority Mail by United States Postal Service.

7. Express Mail and Priority Mail may weigh up to 70 pounds and is desired for large volume shipments.

f. Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g. Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies, addresses in foreign countries, and legitimate names and addresses of persons other than their own, or occupants at the residence, in order to receive controlled substances and/or proceeds/monetary instruments at their residence under names and residences other than their own to avoid suspicion and in an effort to conceal their true identities and place of residence.

i. I also know that drug orders containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor or controlled substances.

j. I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

6. The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7. On December 4, 2007, during routine interdiction activities at the Midway Processing and Distribution Facility (P&DF) in San Diego, California, I became aware of a suspicious Express Mail parcel that is the subject of this affidavit and retrieved it for further investigation.

8. I became suspicious of the Express Mail parcel for the following reasons: the label was handwritten as opposed to typewritten; there were no telephone numbers listed on the label; database checks determined although the sender's address was complete, Sonya Campbell is not associated with that address; additional database checks determined although the recipient's address is complete, Carlita O'Neal is not associated with that address, an individual named Rubye Robinson is the current resident of 1358 Peach Avenue, El Cajon, CA.

9. On December 4, 2007, a Knock and Talk was conducted at 1358 Peach Avenue, El Cajon, CA. Edrian Robinson, a minor, was briefly interviewed. Edrian Robinson provided contact information for her mother, Rubye Robinson, who was at work. Robinson was subsequently contacted and advised she and Carlita O'Neal were next door neighbors three years ago at another address in El Cajon. In the last three years, Robinson has only seen O'Neal on one occasion in 2006. Their daughters were both attending the same middle school and she saw her at the 2006 middle school graduation. Robinson stated she does not know how to get in touch with O'Neal, has never received mail for her in the past, and was not expecting this parcel. In December 7, 2007, Robinson signed a Disclaimer of Ownership for the package.

10. On December 4, 2007, I met with Detective Dan Billberry and his trained narcotic detection canine, Blaek, the Midway Processing and Distribution Facility (P&DF) in San Diego, California. Detective Billberry and Blaek conducted an exterior inspection of the subject parcel. When Blaek examined the parcel described above, Detective Billberry advised that Blaek did not alert to the presence of the odor of controlled substances in the parcel. The qualifications of canine Blaek are contained in attachment A. Subsequently, on December 7, 2007, I met with Detective Mike Anderson and his trained narcotic detection canine Kilo, at the Midway Processing and Distribution Facility (P&DF) in San Diego, California. Detective Anderson and Kilo conducted an exterior inspection of the subject parcel. When Kilo examined the parcel described above, Detective Anderson advised that Kilo did alert to the presence of the odor of controlled substances in the parcel. The qualifications of canine Kilo are contained in attachment B.

11. On December 7, 2007, I contacted O'Neal's last known place of employment, TriStaff Group, a temporary staffing company. Melissa Lockwood, Human Resources Director, confirmed O'Neal worked for TriStaff until November 2007 and offered to contact her for me as it was against

company policy to provide former employee contact information. Lockwood re-contacted me with ten minutes. Lockwood stated she spoke to O'Neal and advised her of this express mail package that was sent in care of O'Neal but to an address where O'Neal does not reside. Lockwood provided O'Neal my telephone number in the event she would like to claim her package. On December 10, 2007, at my request, Lockwood re-contacted O'Neal to ensure O'Neal had my accurate contact information. Lockwood advised O'Neal confirmed she had my contact information but requested Lockwood not provide O'Neal's contact information to me.

12. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the subject parcels as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

Kim Kelly
Postal Inspector

Sworn to before me, and subscribed in my presence, on this ~~15th~~ 11th day of ~~November~~ December 2007.

U. S. Magistrate Judge

**ATTACHMENT A**
**For**
**Daniel M. Billberry and K-9 Blaek**

Daniel M. Billberry is currently a detective for the San Diego Police Department (SDPD) assigned to the San Diego Integrated Narcotic Task Force (NTF) and deputized as a Federal Officer. Det. Billberry has been a police officer for over 20 years and has worked as a narcotic detection dog handler since June 2005. Det. Billberry is a member of the California Narcotic Canine Association and the California Narcotics Officers Association.

Detective Billberry has participated in over 200 arrests of persons for violations of controlled substance laws. Det. Billberry has in excess of 250 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 80 hour DEA Narcotic Investigator Course, the 40 hour DEA Clandestine Laboratory Investigator Course, the 40 hour Drug Trafficker Interdiction Characteristics Course, the 40 hour DEA Operation Jetway Investigator Course and the 40 hour SkyNarc Criminal Interdiction Course. Det. Billberry has testified as an expert in the field of narcotics in state court. Det. Billberry is familiar with the manner in which said substances are packaged, marketed and consumed. Detective Billberry has received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor. Detective Billberry has worked in an undercover capacity in purchasing controlled substances.



From May 1999 to June 2005, Det. Billberry was assigned to the Narcotic Street Team. Det. Billberry was involved in over 200 cases either as the case agent or assisting detective. Detective Billberry has observed hundreds of persons involved in narcotic trafficking and has developed an expertise in observing certain characteristics, of which one or more are commonly evident in the majority of narcotic smuggling cases.

On June 4, 2005, Detective Billberry was assigned to the NTF Commercial Interdiction Team. Det. Billberry has been involved in over 100 parcel cases where he utilized surveillance techniques, profiles of persons and parcels and his narcotic detection canine. Det. Billberry has observed several hundred parcels during the course of his duties. On selected parcels, Det. Billberry has observed certain characteristics that although not illegal, when taken in their totality lead him to believe the parcel contains controlled substances. These include illegible or non-existent return addresses, misspelled street names, handwritten labels, taped in an unusual manner, strong masking odors emitting from the parcel and/or cash payment.

Until recently, Det. Billberry has been able to confirm his suspicions by utilizing a narcotic detection canine to alert to packages. It has come to Det. Billberry's attention during recent inspections of parcels containing controlled substances discovered during routine audits by United Parcel Service and Federal Express security that the smugglers are utilizing extreme measures to shield the odor of the controlled substances from the canine.

In June 2005, Detective Billberry was assigned to train K9 "Blaek" in the area of narcotic detection. Detective Billberry and Blaek received 20 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine from SDPD narcotic canine trainer Steve Sloan. Steve Sloan is a certifying official for the California Narcotic Canine Association. Prior to Det. Billberry being assigned Blaek, Blaek was assigned to Officer Sharon Ortega. During that time, Officer Ortega and Blaek received 200 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine by the San Diego Police Department's Canine Unit. In the spring of 2005 Blaek was certified as 100% proficient in the detection of same by the San Diego Police Department Canine Unit.

On December 1, 2006, "Blaek" was recertified as 100% proficient in the detection of same by California Narcotic Canine Association certifying official Scott Blom.

Blaek's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. Blaek has completed a total of 220 hours of training. Subsequent to his certification. Blaek has alerted 65 times where 65 search warrants have been obtained on his alerts. Blaek alerts on several occasions where the controlled substances are seized when a warrant is not required because a warrant or consent has already been obtained.

Detective Billberry and Blaek have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of

smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been the experience of Detective Billberry, a properly trained narcotic detection canine will not alert to all currency. Det. Billberry has witnessed searches of parcels by trained narcotic detection canines where no alert was given. The parcels later were discovered to contain substantial sums of U.S. Currency.

It has been Detective Det. Billberry's experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been Det. Billberry's experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.

###

(11/06/07)

ATTACHMENT B
For
Michael J. Anderson and K-9 Kilo

Michael Anderson has been a Probation Officer for the San Diego County Probation Department for the past 17 years and is currently assigned to the East County Gang Task Force. Officer Anderson is also the Probation Department's Narcotic K-9 handler. In addition, Officer Anderson assists the Jurisdictions Unified for Drug and Gang Enforcement (J.U.D.G.E.), San Diego Integrated Narcotics Task Force (NTF), Field Action Specialty Team (FAST), and local Post Offices as well as the San Diego Police Department in searches for narcotics. Officer Anderson is a member of the California Narcotics Officers Association as well as the California Narcotic Canine Association.

On July 2003, he was assigned the responsibility of training and working with the San Diego Probation Department's narcotic K-9, Kilo, ID#K1. Between July and August 2003, San Diego Police Officer Steve Sloan trained Kilo and Officer Anderson in the area of narcotics. Officer Anderson and Kilo have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Kilo's alert consists of physical and mental reactions, which include a heightened emotional state and coming to a complete "sit" when his physical position allows.

On August 16, 2003 after 40 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine, California Narcotics Canine Association certifying official Tom Iverson certified Kilo as 100% proficient in the detection of the same.

On November 14, 2003, Kilo was re-certified by California Narcotics Canine certifying official Tom Moore.

On 5/03/2005, Kilo was re-certified by California Narcotics Canine certifying official Mary Bohnnett.

On 3/31/06, Kilo was re-certified by California Narcotics Canine certifying official Joe Priebe.

On 12/1/06, Kilo was re-certified by California Narcotics Canine certifying official Joe Priebe.

Prior to Officer Anderson and Kilo becoming certified as a team, Kilo received 100 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine by California Narcotics Canine Association certifying official Mary Bohnnett. To date, Kilo has completed a total of 475 hours of training.